Your Honor, as I raised two points on appeal, the first point dealing with the introduction of evidence by the government of other crimes, evidence under Rule 404B, and the related point that the trial court denied the defense request to give the Pattern IX Circuit instruction on that point. It's the appellant's position that that was correct. It was a clear error that substantially affected his rights. It allowed the government, in its final argument, to misuse that evidence. The government, in its brief in opposition, raises the argument that it can be considered not 404B evidence, but evidence that was intrinsically intertwined with the fraud charges. Well, didn't the court say that the jury was only to determine whether Hattabaugh was guilty or not guilty of the charges in the indictment? Isn't that pretty clear limiting? I don't think so, Your Honor. The judge certainly gave that charge. And when they were talking about the request to charge, he pointed to that as the reason why he wouldn't give the Pattern instruction. But that doesn't give clear guidance to the jury as to what is the permissible use of this Oklahoma evidence about the purchase of the house in Oklahoma. The jury knows that he's charged with 12 wire-count frauds, but then he went on to say that the jury should consider evidence as to the act statements and intentions of others or evidence about other acts of the offendant only as they relate to the charge against the defendant. But there's no limitation that this Oklahoma's evidence doesn't relate to the fraud charges. The jury is never told. But by the way, the Oklahoma evidence is only going to motive. It's just there to explain that he had a motive to purchase this. Instead, the AUSA and the others argued that it was a motive. Kennedy, I'm sorry, Your Honor. Kennedy, wouldn't that be an argumentative instruction given by the judge? Your Honor, if the judge had simply given the Pattern Ninth Circuit instruction that the Oklahoma City evidence just went to motive, that would have strengthened the trial counsel, the defense counsel's argument that that Oklahoma City evidence shouldn't be used to prove that Mr. Hatterbarrel was a habitual liar, that in fact he's lying again in Oklahoma. Did counsel request such instruction? He did request the 404b evidence in writing, and then there was a, of course, a brief hearing on it where it was discussed. So, yes, the trial court did give the other instructions, but it seems clear that under the law, and Huddleston and Curtin and other cases in this circuit, he has to give the Ninth Circuit, the Pattern instruction, which specifically tells a jury that this other crime evidence goes to motive. I think the argument that it was intrinsically intertwined is not well taken. You can look at the entire government's case. It's whole and complete, and the Oklahoma evidence is on the other side. It goes to motive. I concede it was admissible for motive. There are plenty of cases that say in a fraud case showing a defendant's need for money goes to motive, and it's admissible. But here, I think it was, one, misused by the government to argue propensity to lie, and that error was uncorrected by the trial court when he was specifically requested to give an instruction that the Supreme Court in Huddleston and this Court has repeatedly said should be given. I was thinking before the argument today about the government's position about intrinsically intertwined. Another problem with it is the defense wasn't given notice at trial that this evidence was anything other than other crimes evidence. In fact, when the government filed papers before Judge Walker, the original judge who had this case, they told the judge this was going to be fairly innocuous evidence, just proof that the defendant was going to buy a house. So the defendant's not on notice that the government is going to then turn around and file an argument and argue this is part of the pattern of web of lies. Do you want to say something about the vouching issue? Very briefly, Your Honor. I put it out in great length in the brief. We have a difference of opinion with the government about whether it was vouching. I think it went over the line. I understand that the trial court, in the trial court, defense counsel didn't object. But here, under a plain error, I still think it was so far over that it did affect the substantial rights. All right. Why don't we hear from the government? You have plenty of time to respond. Thank you, Your Honor. Good morning. May it please the Court. Hartley West for the United States. Beginning first with the argument regarding the ostensible error and failure to give a limiting instruction, and then I will turn to the alleged prosecutorial misconduct. There was, in fact, no error in failing to give a limiting instruction because none was required. This evidence was inextricably intertwined. First, the house contract and the information that Mr. Hattabah had said that the money for closing the escrow would be coming from a particular Bank of America account are actually part of the fraud offense itself. They show his intent to defraud. They show that he was intending to use the Seedy Investment Funds for personal use. And also, very critical here, there was a negative balance in that particular Bank of America account at the time he said the money was going to come from there. Now, what goes into that account? Well, the victims testified that they were directed to deposit their Seedy Investment Funds into that particular Bank of America account. So it's actually part of the fraud scheme itself. Moreover, the other testimony by Ms. Baker regarding the various lies and excuses and stall tactics for why help to explain why the escrow did not close timely, why it was delayed, and they were part of the story that the cases have held that the jury is entitled to hear the circumstances, and that's exactly what was testified to there. Now, importantly, defense counsel just said that he had, or trial counsel, had no notice that the government intended to raise these issues, and that's just simply not true. At Government Excerpt of Record, pages 5 through 9, it shows that trial counsel for the defense, in fact, stipulated, offered to stipulate, rather, to introduce records showing all of this, including, as government counsel said, she wanted to include the lies about the wire confirmation numbers. She wanted Ms. Baker to testify to that and the various excuses that Mr. Haddabot told to Ms. Baker, and defense counsel had said, well, we'll stipulate to all of that coming in through the record. So the only thing that is at issue here is whether a limiting instruction was appropriate. Kennedy. May I ask you, what was the argument of the government against the giving of the limiting instruction? There was no argument by the government about that. The district court simply decided that it wasn't necessary in light of the court's other instructions. All right. Counsel, Judge Gould, I have a question. There are cases like, I think, Bradshaw and Solomon are two different ones that seem to suggest that when there's a, like an instruction, the person is only on trial for, you know, such and such, that's all you should consider, that that may be sufficient in lieu of a different limiting instruction. And I, if you're familiar with those cases, I wanted to ask you to address their significance, assuming we don't agree with you on the inextricably intertwined issue. Yes. Assuming the Court does not agree that this evidence was inextricably intertwined, the Court would then consider whether there was an abuse of discretion in failing to give the limiting instruction. And numerous cases have held that the limiting instruction is just one factor in deciding whether there was an abuse of discretion. For instance, Your Honor mentioned Bradshaw, and one case that is very on point here is Solomon. And there, the Court held that the district court's general charge was sufficient. And that was the same charge given here, that you are not on trial, or the defendant, rather, is not on trial for any act or conduct not alleged in the indictment. And so the Court said, well, there's no abuse of discretion, period. But beyond that, there was no any error here was harmless because the evidence was so intertwined with the fraud scheme itself. And even on a 404b basis, as the defense concedes, it was relevant to motive, but it was also relevant to the defendant's identity as the perpetrator of the fraud, the absence of mistake in giving false wire confirmation numbers, intent, knowledge, and plan. So it was relevant on numerous grounds. And in light of the district court's general charge, together with the fact that both government counsel and defense counsel narrowed the framework before the jury by saying that this evidence was only relevant to the jury's decision-making on the charges with regard to motive. So these things, together with the fact of the overwhelming evidence of Mr. Hattabah's guilt, show that any error, if it existed, was, in fact, harmless. Turning to the vouching argument, they the defense hasn't discussed particularly any of the statements that they addressed in their brief, so I'd be happy to discuss particular ones that might concern the Court. But we have plain error review here. That's correct. It's plain error review. We believe that, in fact, there was no error, that all of the statements that were made were invited by the defense counsel's, the defense generally, attack on the witness's credibility in their opening statement and which continued through cross-examination. The any arguments made by counsel were based on the evidence. They argued permissible, reasonable inferences. And there was no objection, which is critical here. Given the prosecutor having in closing argument voluntarily, without an instruction from the court, saying this evidence is only going to motive, it is entirely reasonable to believe that had there been an objection by defense counsel, even if the trial court didn't say something, that the prosecutor herself would have taken a step back and tried to cure any error that might be perceived. So these facts, together with the general instructions by the court that arguments of counsel are not evidence, that he was only on trial for the charged offenses, that the government must prove its case and all of the elements, which it described, of course, in detail, beyond a reasonable doubt, this, together with the overwhelming evidence, shows that there were no substantial – there was no miscarriage of justice and the substantial rights of the defendant were not infringed. Thank you, counsel. Thank you. Mr. Jordan, you have some reserve time. Thank you, Your Honor, but I will be brief. First, Ms. West's citation to the Solomon case I don't think is on point. I reread Solomon last night. In that case, the evidence was always admitted as intrinsically intertwined, not as 404b evidence. So the charge of 404b evidence was never actually required under Ninth Circuit law. To clarify my point about notice, the defense was on notice that the government, of course, was going to introduce this evidence about the Oklahoma house purchase, but the defense was not on notice prior to trial, was that the government would go beyond merely introducing the house as evidence of motive and instead tie it into their argument that this was part of the web of lies. What did you think the Oklahoma house was going to be used for other than motive? I believe the defense counsel was on notice it was going to be used solely for motive, solely for motive, and that it's 404b evidence. So instead of having two trials, it would be limited to just its purpose under 404b, Your Honor. And just briefly on the third point, when counsel for the government says that this was an overwhelming case, again, she's assuming that the three witnesses for the government, the three principal witnesses, Mr. Nayendo, Mr. Terry, and Mr. Kays, were believable and are briefly pointed out their issues with their credibility. On that point, I'll submit it to the Court. Thank you, Counsel. The case just argued has been submitted for decision, and we will now hear argument in George versus the Bay Area Rapid Transit.
judges: O'scannlain, Gould, Bea